IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

GREAT WEST CASUALTY COMPANY as     *
subrogee and assignee of TOMLIN
TRUCKING & BROKERAGE, INC.,         *

        Plaintiff,                   *

vs.                                     *
                                          CASE NO. 3:06-CV-02 (CDL)
BUCHANAN EXPRESS, INC.,             *

        Defendant.                 *

                                        *

O R D E R

Presently pending before the Court is Plaintiff Great West Casualty Company's motion for summary judgment (Doc. 10) on its breach of contract claim against Defendant Buchanan Express, Inc. Plaintiff has also asserted claims against Defendant under the Carmack Amendment, 49 U.S.C. § 14706, but has not moved for summary judgment on those claims. For the following reasons, Plaintiff's motion is granted.

BACKGROUND

Plaintiff Great West Casualty Company is an insurance company that provides cargo insurance coverage to licensed property brokers. Plaintiff insures Tomlin Trucking and Brokerage, Inc. ("Tomlin"). On May 14, 2003, Tomlin entered into an agreement ("Carrier Agreement") with Defendant Buchanan Express for the transportation of cargo by Defendant. Under the Carrier Agreement, Tomlin as the broker would tender cargo to Defendant. Defendant, as the carrier, would then "provide equipment and drivers to transport [the cargo] for [Tomlin]

according to the schedule of rates agreed to by the two parties." (Compl. Ex. 1 ¶ 2.)

In November 2004, Tomlin arranged for Defendant to transport a load of steel coils from shipper New Process Steel in Indiana to consignee Overhead Door Corporation ("Overhead") in Athens, Georgia. On November 5, 2004, Defendant accepted the cargo of steel coils that had been loaded onto Defendant's truck by the shipper. The following day, while in transit to Athens, Defendant's truck was involved in an accident. Defendant claims that the accident occurred when the steel coils shifted while the driver was going around a curve. This caused the driver to lose control of the vehicle, then hit a tree and a fence. Defendant blames the accident on poor loading by the shipper—had the shipper properly loaded the coils onto the truck, the cargo would not have shifted and caused the accident. Four coils of steel were damaged in the accident.

Overhead received the steel coils and sold the damaged steel to a scrap metal dealer. Overhead received three cents per pound for the 44,000 damaged pounds of steel, receiving in total $1320. (Patrick Decl. ¶ 12, Oct. 3, 2006.)[1] Overhead then filed a claim with Tomlin for the damage to the steel totaling $33,343.89 which consisted of $29,043.89 for the damaged steel, $5620 for the accident clean up and transportation of the damaged steel, less the $1320 received from the scrap dealer. (Patrick Decl. ¶¶ 8, 10-11.)

Plaintiff paid Overhead the requested $33,343.89 to settle all claims by Overhead against Tomlin. As a result, Overhead assigned

---

[1]Debra Patrick is the Controller for the Georgia Division of Overhead. She has served in this capacity since 1998 and supervises accounts payable for Overhead.

2

all claims it had against Defendant related to the damaged steel coils to Plaintiff. (Patrick Decl. Ex. C.) Tomlin also assigned to Plaintiff any claims that it may have against Defendant. (Compl. Ex. 4.) Although it is unclear from the record which company submitted the claim—Overhead, Tomlin, or Plaintiff—a claim for $33,343.89 was submitted to and rejected by Defendant. Plaintiff filed the instant action to recover for the damage to the cargo under the Carmack Amendment and for Defendant's alleged breach of the Carrier Agreement. Presently pending before this Court is Plaintiff's motion for summary judgment on its breach of contract claim.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This burden can be met by showing that the non-moving party will be unable to "establish the existence of an element essential to [the non-moving party's] case, and on which [the non-moving party] will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the non-moving party to show that there *is* a genuine issue of material fact. *Id.* at 324. A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). There is a genuine issue if the evidence would allow a reasonable jury to find for the non-moving party. *Id.* In other words, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## II. Breach of Contract

"A breach of contract may arise in any one of three ways, namely: by renunciation of liability under the contract; by failure to perform the engagement; or by doing something which renders performance impossible." *Feagin v. Feagin*, 174 Ga. App. 474, 475, 330 S.E.2d 410, 412 (1985) (quotation marks and citation omitted). "The construction of a contract is a matter of law for the court." *Foshee v. Harris,* 170 Ga. App. 394, 395, 317 S.E.2d 548, 549 (1984) (citations omitted). "The existence or non-existence of ambiguity in a contract is a question of law for the court." *Id.* (citation omitted). "Where the language of a contract is plain and unambiguous, . . . no construction is required or even permissible." *Jones v. Barnes*, 170 Ga. App. 762, 765, 318 S.E.2d 164, 167 (1984) (citations omitted).

Plaintiff claims that Defendant breached the Carrier Agreement by failing to pay Tomlin, and consequently Plaintiff as subrogee of Tomlin, for the damages to the steel coils. Plaintiff bases this argument on paragraph 4 of the Carrier Agreement which states:

> The CARRIER agrees to assume responsibility and liability for damage to or loss of any cargo which is in transit or otherwise in his custody. It is agreed that CARRIER will indemnify and hold BROKER and SHIPPER harmless from and against any claims for personal injury, including death, to any person or for damage to any property arising out of the

4

>     operation of any equipment by CARRIER in performing transportation services.

(Compl. Ex. 1 ¶ 4.) Plaintiff claims that the first sentence of paragraph 4 unambiguously requires Defendant to pay for any damage to the cargo while in transit or in the Defendant's custody. Thus, Plaintiff contends, Defendant breached this provision by failing to reimburse Tomlin for the damage to the cargo. The Court agrees.

The first sentence of paragraph 4 of the Carrier Agreement states that Defendant "agrees to assume responsibility and liability for damage to . . . any cargo which is in transit or otherwise in [Defendant's] custody." The Court finds this provision and the terms therein unambiguous. It unequivocally and clearly states that Defendant agrees to assume responsibility and liability for damage to any cargo. The provision contains no conditions or limitations on the carrier's liability.

Defendant fails to address the unambiguous language in the Carrier Agreement. Instead, Defendant argues that it should not be liable because the shipper allegedly loaded the cargo improperly. Yet, Defendant does not explain how the Carrier Agreement can be interpreted to impose a condition that Defendant is only liable if the cargo was loaded properly.

It is true that under the Uniform Commercial Code and Federal Bill of Lading Act, a carrier is not liable for damage to cargo caused by the shipper's incorrect loading if the bill of lading contains the words "shipper's weight, load, and count." U.C.C. § 7-301(d); 40 U.S.C. § 20113(b)-(c); O.C.G.A. § 11-7-301(4); *see also, e.g., United States v. Savage Truck Line, Inc.*, 209 F.2d 442, 445 (4th Cir. 1954); 22 Richard A. Lord, *Williston on Contracts*

5

§ 59:18 (4th ed.). This argument, however, does not help Defendant here because in this case Defendant unambiguously agreed to be responsible for the shipment of the cargo regardless of whether it had been loaded improperly. To impose a "proper loading" condition in the Carrier Agreement would be tantamount to rewriting the parties' agreement. Plaintiff's breach of contract claim is not based upon the terms in the bill of lading. Additionally, "[u]nder basic principles of contract law it is axiomatic that, as long as the provisions of a given contract are in compliance with the requirements of governing statutes, the parties to the contract may include provisions different from, or more liberal than, those prescribed in the statute or statutes." *Jones v. Barnes*, 170 Ga. App. 762, 764-65, 318 S.E.2d 164, 166 (1984). Defendant therefore cannot escape its contractual duty by relying upon general principles of law that do not apply under the specific facts of this case.[2]

The Court finds that Defendant breached the Carrier Agreement and is liable to Plaintiff for the damage proximately caused to Plaintiff as result of the damaged steel coils. Plaintiff's motion for summary judgment is therefore granted as to liability on the breach of contract claim.

---

[2] The Court also notes that Defendant's only evidence that the accident was caused by the improper loading of the cargo is a police report which states "Driver #1 stated that as he was entering the curve he pressed his brake pedal and felt his cargo shifting and that is when he lost control of the vehicle." (Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. Ex. A.) This evidence is of course inadmissible hearsay. Furthermore, Defendant has not provided any evidence that shows that the alleged cargo shift was necessarily caused by the shipper's improper loading of the cargo. Thus, even if the Court found a "proper loading" condition in the contract, Defendant has failed to present evidence creating a genuine issue of material fact that improper loading played a role in the damage to the cargo.

6

**III. Damages**

Defendant also maintains that Plaintiff is not entitled to summary judgment because it has failed to establish its damages and has failed to sufficiently mitigate those damages. Damages are an essential element of a breach of contract claim. *Dyer v. Honea*, 252 Ga. App. 735, 741, 557 S.E.2d 20, 27 (2001). "It is the plaintiff's burden to show the damages, and the plaintiff cannot do this by resorting to speculation, conjecture and guesswork." *All Angles Constr. & Demolition, Inc. v. Metro. Atlanta Rapid Transit Auth.*, 246 Ga. App. 114, 117, 539 S.E.2d 831, 834-35 (2000) (citation and internal quotation marks omitted). The plaintiff also has a duty to mitigate its damages "as far as is practicable by the use of ordinary care and diligence," O.C.G.A. § 13-6-5, but the burden is upon the defendant to show that the plaintiff "could have lessened [its] damages, and such proof must include sufficient data to allow [a] jury to reasonably estimate how much the damages could have been mitigated." *Moreland Auto Shop, Inc. v. TSC Leasing Corp.*, 216 Ga. App. 438, 440, 454 S.E.2d 626, 628 (1995) (citation and quotation marks omitted).

Plaintiff has presented evidence showing that the cargo was damaged in the amount of $29,043.89. (Patrick Decl. ¶ 10, Exs. A, B, C.) The evidence also shows that Overhead was charged $5620 by King's Auto Alignment, Inc. for clean up of the accident site, transportation of the cargo from the accident site, and storage of the cargo. (Patrick Decl. ¶ 11.) Finally, Plaintiff presented evidence that its damages were mitigated when Overhead sold the damaged cargo to a scrap metal dealer for $1320. Thus, in total,

Plaintiff has presented evidence that its mitigated damages are $33,343.89.

The Court finds that Plaintiff has presented sufficient evidence of its damages in the amount of $33,343.89 and that Plaintiff has reasonably mitigated its damages. Defendant has failed to produce any evidence to rebut Plaintiff's evidence of mitigation. As explained *supra*, it is Defendant's burden to present evidence to show that Plaintiff failed to mitigate its damages. Defendant's mere statement that Plaintiff's mitigation was not "commercially reasonable" does not meet this burden. Defendant has also failed to produce sufficient evidence to create a genuine issue of material fact as to Plaintiff's damages. Therefore, Plaintiff has established its damages as a matter of law, and Plaintiff is entitled to summary judgment.

## CONCLUSION

Plaintiff's motion for summary judgment (Doc. 10) is granted. Judgment shall be entered in favor of Plaintiff in the amount of $33,343.89. Plaintiff shall also recover its costs.

IT IS SO ORDERED, this 7th day of May, 2007.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE